**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| ÇOLAKOĞLU METALURJI A.S. & ÇOLAKOĞLU, DIS TICARET A.S., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| UNITED STATES, ) ) | Court No. 20-00153 |
| Defendant, ) ) | |
| and, ) ) | |
| REBAR TRADE ACTION COALITION, ) ) | |
| Defendant-Intervenor. ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
REZA KARAMLOO
Senior Counsel
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

ANN C. MOTTO
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-7968
Fax: (202) 305-2062

May 12, 2021

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

RULE 56.2 STATEMENT ...................................................................................................... 2

    I.     The Administrative Determination Under Review ................................................. 2

    II.    Issue Presented ...................................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.     Standard Of Review ............................................................................................... 4

    II.    Commerce's Decision To Base Colakoglu's Net Countervailable Subsidy Rate
          On The Rate Calculated For The Company In The Prior Segment Of The
          Proceeding Is Supported By Substantial Evidence And In Accordance
          With Law ................................................................................................................ 5

          A.     Commerce's Methodology Is In Accordance With Law ............................ 6

          B.     Commerce's Methodology Is Supported By Substantial Evidence .......... 12

CONCLUSION ................................................................................................................... 13

## **TABLE OF AUTHORITIES**

**CASES**                                                                                           **PAGE(S)**

*Albemarle Corp. v. United States*,
   821 F.3d 1345 (Fed. Cir. 2016) ..................................................................... *passim*

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ........................................................................ 5

*Blum v. Bacon*,
   457 U.S. 132 (1982) ..................................................................................... 5, 8

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys. Inc.*,
   419 U.S. 281 (1974) ........................................................................................ 11

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
   467 U.S. 837 (1984) ................................................................................... 5, 10

*Citrosuco Paulista, S.A. v. United States*,
   704 F. Supp. 1075 (Ct. Int'l Trade 1988) .................................................... 13

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ................................................................................. 4, 13

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ........................................................................................ 4

*Corus Staal BV v. United States*,
   395 F.3d 1343 (Fed. Cir. 2005) ...................................................................... 4

*Cultivos Miramonte S.A. v. United States*,
   980 F. Supp. 1268 (Ct. Int'l Trade 1997) .................................................... 13

*Ford Motor Credit C. v. Milholin*,
   444 U.S. 555 (1980) ..................................................................................... 5, 8

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ........................................................................ 4

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................................ 4

*Hangzhou Spring Washer Co. v. United States*,
   387 F. Supp. 2d 1236 (Ct. Int'l Trade 2005) ................................................ 5

*Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*,
  Slip. Op. 21-20, 2021 WL 659275 (Ct. Int'l Trade Feb. 19, 2021) ......................................... 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................................... 11

*Nippon Steel Corp. v. United States*,
  458 F.3d 1345 (Fed. Cir. 2006) ...................................................................................... 5

*Rebar Trade Action Coalition v. United States*,
  335 F. Supp. 3d 1302 (Ct. Int'l Trade 2018) ............................................................. 7

*Timken Co. v. United States*,
  699 F. Supp. 300 (Ct. Int'l Trade 1988) ..................................................................... 4

*Touche Ross & Co. v. Redington*,
  442 U.S. 560 (1979) ...................................................................................................... 10

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) .............................................................................................. 4, 11

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) ................................................................................. 11

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F. 3d 1370 (Fed. Cir. 2013) ................................................................................... 9

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) ............................................................................................ 4

19 U.S.C. § 1671d(c)(5)(A) ..................................................................................... 5, 7

19 U.S.C. § 1677f-1(e) ......................................................................................... 3, 6, 7

19 U.S.C. § 3512(d) ....................................................................................................... 9

## OTHER AUTHORITIES

*Circular Welded Carbon Steel Pipes and Tubes from Turkey: Final Results of Countervailing
Duty Administrative Review; Calendar Year 2012 and Rescission of Countervailing Duty
Administrative Review, in Part*,
  79 Fed. Reg. 51,140 (Dep't of Commerce Aug. 27, 2014) ....................................... 12

*Steel Concrete Reinforcing Bar From the Republic of Turkey*,
  79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014) ........................................... 2

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,*
   83 Fed. Reg. 54,912 (Dep't of Commerce Nov. 1, 2018)........................................................ 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
   84 Fed. Reg. 2,159 (Dep't of Commerce Feb. 6, 2019) ........................................................ 3

*Steel Concrete Reinforcing Bar From the Republic of Turkey,*
   84 Fed. Reg. 36,051 (Dep't of Commerce July 26, 2019)...................................................... 4

*Steel Concrete Reinforcing Bar from the Republic of Turkey,*
   85 Fed. Reg. 3,030 (Dep't of Commerce Jan. 17, 2020) ...................................................... 3

*Steel Concrete Reinforcing Bar From the Republic of Turkey,*
   85 Fed. Reg. 42,353 (Dep't of Commerce July 14, 2020)...................................................... 2

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103–316, Vol. 1 (1994)............................................................................................. 9, 12

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| ÇOLAKOĞLU METALURJI A.S. & ) <br> ÇOLAKOĞLU, DIS TICARET A.S., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> REBAR TRADE ACTION COALITION, ) <br> ) <br> Defendant-Intervenor. ) | Court No. 20-00153 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by plaintiffs Colakoglu Metalurji A.S. and Colakoglu Dis Ticaret A.S. (collectively, Colakoglu or plaintiffs).  Colakoglu challenges certain aspects of the United States Department of Commerce's final results in the administrative review of the countervailing duty order on steel concrete reinforcing bar (rebar) from the Republic of Turkey.  For the reasons explained below, the motion should be denied because Commerce's determination is supported by substantial evidence and is otherwise in accordance with law.

## RULE 56.2 STATEMENT

### I.    The Administrative Determination Under Review

The administrative determination under review is *Steel Concrete Reinforcing Bar From the Republic of Turkey*, 85 Fed. Reg. 42,353 (Dep't of Commerce July 14, 2020) (final admin. review & partial rescission), P.D. 138,[1] and accompanying Issues and Decision Memorandum (Dep't of Commerce July 6, 2020) (IDM), P.D. 135 (collectively, *Final Results*).  The period of review covered by the *Final Results* is January 1, 2017, through December 31, 2017.

### II.    Issue Presented

Whether Commerce's decision to base Colakoglu's net countervailable subsidy rate on the rate calculated for the company in the prior segment of the proceeding was supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On November 6, 2014, Commerce published a countervailing duty order covering Turkish rebar.  *Steel Concrete Reinforcing Bar From the Republic of Turkey*, 79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014) (order).  In November 2018, Commerce issued a notice of opportunity to request an administrative review of that order for the period January 1, 2017, through December 31, 2017.  *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 83 Fed. Reg. 54,912 (Dep't of Commerce Nov. 1, 2018), P.D. 146.  Petitioner Rebar Trade Action Coalition and plaintiffs requested an administrative review of Colakoglu's sales and shipments of subject merchandise during the period of review.  *See* Letter re:  Steel Concrete Reinforcing Bar from

---

[1]  Citations to the public documents (P.D.) and confidential documents (C.D.) refer to the record of the countervailing duty administrative review.  Citations to Colakoglu's motion for judgment on the agency record are referenced as "Pl. Br."

Turkey:  Request for Administrative Review (Nov. 30, 2018), P.D. 5; and Letter re:  Steel

Concrete Reinforcing Bar from the Republic of Turkey:  Colakoglu's Request for CVD

Administrative Review (2017 POR) (Nov. 30, 2018), P.D. 4.

Commerce initiated an administrative review of 23 producers and exporters of Turkish

rebar, but, pursuant to 19 U.S.C. § 1677f-1(e)(2)(A)(ii), subsequently limited its individual

review to two companies.  *See Initiation of Antidumping and Countervailing Duty Administrative*

*Reviews*, 84 Fed. Reg. 2,159, 2,168 (Dep't of Commerce Feb. 6, 2019), P.D. 23 (*Initiation*

*Notice*); and Memorandum re:  Steel Concrete Reinforcing Bar from the Republic of Turkey:

Respondent Selection in Countervailing Duty Administrative Review for 2017 (Apr. 26, 2019),

P.D. 28, C.D. 4 (Respondent Selection Memorandum).  Colakoglu was not selected for

individual examination as a mandatory respondent.  *Id.*

On January 17, 2020, Commerce issued its preliminary results.  *Steel Concrete*

*Reinforcing Bar from the Republic of Turkey*, 85 Fed. Reg. 3,030 (Dep't of Commerce Jan. 17,

2020) (prelim. admin. review and intent to rescind), P.D. 119, and accompanying Preliminary

Decision Memorandum (Dep't of Commerce Jan. 9, 2020) (PDM), P.D. 112 (collectively,

*Preliminary Results*).  Commerce preliminarily determined that the mandatory respondents each

received *de minimis* net countervailable subsidies during the period of review.  PDM at 1.

Because the rates calculated for the mandatory respondents were not reasonably reflective of

Colakoglu's experience (*i.e.*, unlike Colakoglu, the mandatory respondents had no history of

benefiting from the natural gas for less than adequate remuneration (LTAR) program),

Commerce preliminarily assigned Colakoglu a net countervailable subsidy rate of 1.82 percent,

the rate calculated for the company in the immediately preceding administrative review of the

order.  *Id.* at 7-8 and n.42 (citing *Steel Concrete Reinforcing Bar From the Republic of Turkey*,

84 Fed. Reg. 36,051 (Dep't of Commerce July 26, 2019) (final admin. review & partial

rescission) (*2016 Final Results*).  Commerce made no change to this approach in its *Final*

*Results*.  *See* IDM at 4, 33-35.  Specifically, Commerce continued to assign a 1.82 percent

subsidy rate to Colakoglu because the mandatory respondents' rates were *de minimis*.  *Id.*

  This action ensued.

## ARGUMENT

### I. Standard Of Review

  This Court upholds any determination, finding, or conclusion by Commerce unless it is

"unsupported by substantial evidence on the record, or otherwise not in accordance with law."

*Corus Staal BV v. United States,* 395 F.3d 1343, 1346 (Fed. Cir. 2005); *Fujitsu Gen. Ltd. v.*

*United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see*

*also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  "Substantial evidence" consists

of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Even if two inconsistent

conclusions may be drawn from record evidence, it does not mean that Commerce's findings are

not supported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Thus, "the court may not substitute its judgment for that of the {agency} when the choice is

between two fairly conflicting views, even though the court would justifiably have made a

different choice had the matter been before it *de novo*."  *Goldlink Indus. Co. v. United States*,

431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted); *see*

*also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (stating that it is

"not within the Court's domain either to weigh the adequate quality or quantity of the evidence

for sufficiency or to reject a finding on grounds of a differing interpretation of the record").

Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006), and the Court will sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from them. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

When determining whether Commerce's interpretation and application of the countervailing duty statutes are in accordance with law, this Court applies the two-step analysis set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Pursuant to *Chevron*'s framework, a court must first "consider 'whether Congress has directly spoken to the precise question at issue,' and, if not, whether the agency's interpretation of the statute is reasonable." *Hangzhou Spring Washer Co. v. United States*, 387 F. Supp. 2d 1236, 1240 (Ct. Int'l Trade 2005) (quoting *Chevron,* 467 U.S. at 842-43)). The Supreme Court has further held that, in the wake of legislative silence, "the interpretation of the agency charged with administering a statute is entitled to substantial deference." *See Blum v. Bacon*, 457 U.S. 132, 141 (1982); *see also Ford Motor Credit C. v. Milholin*, 444 U.S. 555, 565 (1980) ("{c}aution must temper judicial creativity in the face of legislative ... silence.").

## II. Commerce's Decision To Base Colakoglu's Net Countervailable Subsidy Rate On The Rate Calculated For The Company In The Prior Segment Of The Proceeding Is Supported By Substantial Evidence And In Accordance With Law

Pursuant to 19 U.S.C. § 1671d(c)(5)(A)(ii), Commerce "may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated" if "the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely" on the basis of facts available. In this case, because the subsidy rates calculated for the mandatory respondents were *de minimis*, Commerce assigned Colakoglu a net subsidy rate of 1.82 percent *ad valorem*, which was an

individual rate calculated for the company in the immediately preceding administrative review. IDM at 4.  As Commerce explained, the *de minimis* rates calculated for the mandatory respondents would not reasonably reflect Colakoglu's rate because, unlike the mandatory respondents, Colakoglu has a history of using the natural gas for LTAR program.  IDM at 34-35.

Plaintiffs contend that the statute and the Federal Circuit's decision in *Albemarle Corp. v. United States*, 821 F.3d 1345 (Fed. Cir. 2016), "require Commerce to calculate Colakoglu's rate by taking the average of {the mandatory respondents'} subsidy rates."  Pl. Br. at 2.  Colakoglu's contentions rely upon a misreading of the statute, case law, and the administrative record.

### A.  <u>Commerce's Methodology Is In Accordance With Law</u>

When an administrative review involves a large number of potential respondents, the statute permits Commerce to determine:  (1) individual subsidy rates for a reasonable number of exporters or producers by limiting its examination to a sample of exporters or producers, or exporters and producers accounting for the largest volume of the subject merchandise from the exporting country; or (2) a single country wide subsidy rate for all exporters and producers.  19 U.S.C. § 1677f-1(e)(1)-(2).  Of the 23 companies identified, Commerce selected two for individual examination because they accounted for the largest volume of the subject merchandise from Turkey; no party argued that Commerce should select respondents based on sampling.  P.D. 28 at 6.  Commerce determined *de minimis* rates for both mandatory respondents.  PDM at 1; IDM at 34.

Neither the statute nor Commerce's regulations address the rate to be applied to those exporters and producers—like Colakoglu—not selected for individual examination when Commerce limits its examination under section 1677f-1(e)(2) in an administrative review. Generally, in calculating the rates for non-selected respondents, Commerce relies upon section

1671d(c)(5)(A) of the statute, which provides the methodology for calculating the "all-others"

rate in countervailing duty investigations.  Section 1671d(c)(5)(A) provides that:

> {T}he all-others rate shall be an amount equal to the weighted-average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and *de minimis* countervailable subsidy rates, and any rates determined entirely under section 1677e of this title.

19 U.S.C. § 1671d(c)(5)(A)(i).  Where the rates for the individually investigated exporters and

producers under 19 U.S.C. §1677f-1(e) are zero, *de minimis*, or based entirely upon facts

available, Commerce "may use any reasonable method to establish the estimated all-others rate

for exporters and producers not individually investigated…."  19 U.S.C. § 1671d(c)(5)(A)(ii).

This Court has sustained Commerce's practice of relying on the "all-others" provision of section

1671d(c)(5) when determining a rate for non-selected companies in countervailing duty

administrative reviews.  *See, e.g., Rebar Trade Action Coalition v. United States*, 335 F. Supp.

3d 1302, 1310-11 (Ct. Int'l Trade 2018).

    As a matter of basic statutory interpretation, plaintiffs are wrong that Commerce was

"required" to assign any particular rate to Colakoglu.  *See* Pl. Br. at 2.  Because the rates

calculated for the mandatory respondents were *de minimis*, Commerce had broad discretion

under the statute to use "any reasonable method to establish" Colakoglu's rate.  *See*

§ 1671d(c)(5)(A)(ii).  The statute neither defines the phrase "reasonable method" nor proscribes

the use of "an expected method" in calculating the all-others rate.  *See* § 1671d(c)(5)(A)(ii).  In

other words, Congress did not address whether Commerce *must* employ a certain methodology in

establishing the all-others rate.  The Supreme Court has held that, in the wake of legislative

silence, "the interpretation of the agency charged with administering a statute is entitled to

substantial deference."  *See Blum*, 457 U.S. at 141; *see also Milholin*, 444 U.S. at 565

("{c}aution must temper judicial creativity in the face of legislative ... silence."). Indeed, the statute expressly leaves it to Commerce to decide upon a method to establish the all-others rate.

As Commerce explained, although a "'reasonable method'… is to assign to the non-selected respondents the average of the most recently determined rates," where "a non-selected respondent has its own calculated rate that is contemporaneous with or more recent than such previous rates, {the agency} has found it appropriate to apply that calculated rate to the non-selected respondent, even when that rate is zero or *de minimis*." PDM at 7-8; IDM at 4. Commerce elaborated that given Colakoglu's history of benefiting from the natural gas for LTAR program at above *de minimis* levels, the *de minimis* rates calculated for the mandatory respondents, who did not use this program, were not reasonably reflective of Colakoglu's experience. IDM at 34-35 (citing *2016 Final Results*). Accordingly, Commerce determined that it was reasonable to assign Colakoglu the rate calculated for the company in the immediately preceding administrative review. *Id.*

Citing the Federal Circuit's decision in *Albemarle*, plaintiffs contend that Commerce was required to calculate Colakoglu's subsidy rate under the "expected method" by averaging the *de minimis* rates for the mandatory respondents. Pl. Br. at 7-8. But *Albemarle* is not controlling in this case. Pl. Br. at 6-7. *Albemarle* stemmed from an antidumping duty proceeding, not a countervailing duty proceeding. Apart from the methodological distinctions between antidumping duty and countervailing duty law (*e.g.*, antidumping duty law centers on pricing behavior, whereas countervailing duty law concerns government subsidization), the legislative history, which was the primary focus of the Federal Circuit's analysis in *Albemarle*, differs on the issue of the all-others rate. IDM at 33; *see* Statement of Administrative Action (SAA)

accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103–316, Vol. 1, at 4201, 4251 (1994); 19 U.S.C. § 3512(d).

Specifically, the SAA, which is "recognized by Congress as an authoritative expression concerning the interpretation and application of the Tariff Act under 19 U.S.C. § 3512(d)," *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F. 3d 1370, 1373 (Fed. Cir. 2013), clarifies that *in antidumping duty* proceedings, under the "reasonable method" approach, "{t}he expected method … will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available."  SAA at 4201; *see* IDM at 33-34.  In *Albemarle*, the Federal Circuit held that "{t}he SAA thus makes clear that under the {antidumping duty} statute, when all individually examined respondents are assigned de minimis margins, Commerce is expected to calculate the separate rate by taking the average of those margins," and, in that case, Commerce failed to provide substantial evidence showing that there was a reasonable basis for concluding that the separate respondents' dumping rate was different such that Commerce could reasonably deviate from the "expected method." 821 F.3d at 1352-58.

Critically, however, the language in the SAA concerning an "expected method" is entirely absent from the portion of the SAA discussing the "reasonable method" approach for purposes of *countervailing duty* proceedings.  *Compare* SAA at 4201, *with* SAA at 4251; *see* IDM at 33-34.  As the Supreme Court has recognized, legislative silence on an issue is consistent with the view that the agency charged with administering a statute is entitled to broad discretion. *See Chevron*, 467 U.S. at 862; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 561 (1979).

Even assuming, *arguendo*, that *Albemarle* is instructive, that decision was based on materially different facts from those presented here.  The *Albemarle* Court reasoned that Commerce offered "no explanation" as to why two of the three non-selected respondents were no longer represented by the individually examined respondents, even though they had been in both prior reviews.  821 F.3d at 1355.  And as for the third non-selected respondent, which had an individual rate from a prior segment, the Court stated that "{f}ar from suggesting that Huahui's old data would continue to be reasonably reflective here, the current record suggests that normal values decreased and dumping margins declined between the second and third reviews generally."  *Id.* at 1359.  It was unreasonable under those circumstances to reassign Huahui its rate calculated during a prior segment rather than take the average of the *de minimis* margins assigned to the mandatory respondents.  *Id.*

Colakoglu was a mandatory respondent in the most recent segment of this proceeding, and Commerce calculated an individual subsidy rate for the company based on its own subsidy usage.  IDM at 34-35.  And unlike in *Albemarle*, there is no evidence on the record showing that the individual subsidy rate calculated for Colakoglu in the immediately preceding administrative review has become obsolete.  Rather, Colakoglu has a documented history of using different subsidy programs than those used by the mandatory respondents.  IDM at 34-35.  In the immediately preceding review, Commerce determined a subsidy rate of 1.78 percent under the natural gas for LTAR program, and in another segment, Colakoglu purchased natural gas from an entity controlled by the Turkish government (Boru Hatlan Ile Petrol Tasima A.S.).  *Id.* at 35.  As Commerce explained, Colakoglu has a history of using a particular subsidy program well-above *de minimis* rates that the mandatory respondents do not use and, therefore, it is reasonable to assign Colakoglu the rate calculated for it in the most recently completed review.  *Id.*  Thus,

*Albemarle* does not apply here, but even if it does, Commerce's final determination is consistent with it.

Finally, Colakoglu concedes that Commerce may use any reasonable method where it determines that the "expected method" was not feasible or not reasonably reflective of the non-selected respondent.  Pl. Br. at 8; *see Albemarle*, 821 F.3d at 1349 (stating that Commerce may use "other reasonable methods" if the expected method would result in dumping margins that would "not be reasonably reflective of potential dumping margins" for the separate respondents). As Commerce explained, because Colakoglu had a history of benefiting from the natural gas for LTAR program at above *de minimis* levels, the *de minimis* rates calculated for the mandatory respondents, who did not use this program, were not reasonably reflective of Colakoglu's experience.  IDM at 34-35 (citing *2016 Final Results*).  Commerce stated: "Thus, {the mandatory respondents'} *de minimis* rates in this review, given their non-use of the natural gas for LTAR program, would not be reasonably reflective of Colakoglu's rate, given Colakoglu's recent history of benefiting from the natural gas for LTAR program at a well-above *de minimis* subsidy rate."  IDM at 35.  Even if, as plaintiffs wrongly suggest, Commerce's determination is not a paragon of clarity, *see* Pl. Br. at 8 ("Commerce, at best, has skipped a step in its analysis."), this Court can reasonably discern the path that Commerce followed in establishing Colakoglu's rate. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *Bowman Transp., Inc. v. Arkansas–Best Freight Sys. Inc.*, 419 U.S. 281, 285–86, (1974) (a court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."); *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369–70 (Fed. Cir. 1998); *see also* IDM at 34-36 (citing *2016 Final Results*).

Because Commerce possesses broad discretion to use any reasonable method to establish the rate for Colakoglu, and because Commerce provided a reasonable explanation as to why it used the particular methodology that it did, the Court should sustain the determination. *See Eurodif*, 555 U.S. at 316.

### B.   Commerce's Methodology Is Supported By Substantial Evidence

Plaintiffs claim that the record does not demonstrate that Colakoglu's experience was different from the mandatory respondents such that deviation from the "expected method" was warranted. *See* Pl. Br. at 8-9.  Accordingly, plaintiffs contend that Colakoglu's non-selected rate should be remanded. *Id.* at 9.  As stated above, Colakoglu relies upon a misreading of the statute.  Commerce was not required (under the statute, the SAA, or otherwise) to use the "expected method," but instead had broad discretion to use any reasonable method to establish Colakoglu's non-selected company rate.  And that decision was supported by substantial record evidence.

As an initial matter, this is not the first time Commerce has used a subsidy rate based on an individual rate calculated for a company in a prior review where Commerce calculated a *de minimis* net subsidy rate for the mandatory respondents.  *See, e.g., Circular Welded Carbon Steel Pipes and Tubes from Turkey: Final Results of Countervailing Duty Administrative Review; Calendar Year 2012 and Rescission of Countervailing Duty Administrative Review, in Part,* 79 Fed. Reg. 51,140 (Dep't of Commerce Aug. 27, 2014) and accompanying IDM at 3-4 (assigning a rate of .83 percent for Toscelik based on Toscelik's rate in the most recently completed review).

Additionally, this Court recently sustained Commerce's determination that Colakoglu benefited from the natural gas for LTAR program in the prior segment of this proceeding (*i.e.*,

the 2016 administrative review period).  *See Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, Slip. Op. 21-20, 2021 WL 659275 (Ct. Int'l Trade Feb. 19, 2021).  Substantial evidence therefore supports Commerce's determination that Colakoglu "has a history of using the program across segments of this proceeding."  IDM at 35.

Although Commerce is not bound by its prior decisions should new facts or arguments emerge supporting a different conclusion, no new facts or arguments support finding that Colakoglu no longer benefits from the natural gas for LTAR program.  *See Cultivos Miramonte S.A. v. United States*, 980 F. Supp. 1268, 1274 (Ct. Int'l Trade 1997); *Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075, 1088 (Ct. Int'l Trade 1988).  As Colakoglu explains, "only its Request for Administrative Review, dated November 30, 2018, is on the record."  Pl. Br. at 9.  If Colakoglu wanted a rate other than the non-selected rate established for the company by Commerce, it could have requested voluntary treatment and supplemented the record with information regarding its use or non-use of the natural gas for LTAR program.  But Colakoglu did not, and now asks that this Court force Commerce to ignore evidence of the company's recent history.  Colakoglu does not dispute Commerce's fundamental factual finding that neither mandatory respondent used the natural gas for LTAR program, rendering their *de minimis* rates not reflective of Colakoglu's experience.  That conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate{.}" *Consol. Edison Co.,* 305 U.S. at 229.

## **CONCLUSION**

For these reasons, we respectfully request that this Court sustain Commerce's final determination.

13

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                              /s/ Ann C. Motto
REZA KARAMLOO                            ANN C. MOTTO
Senior Counsel                           Trial Attorney
Office of the Chief Counsel              Commercial Litigation Branch
  for Trade Enforcement and Compliance   U.S. Department of Justice
U.S. Department of Commerce              Civil Division
Washington, D.C.                         P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel: (202) 353-7968
                                         Fax: (202) 305-2062
May 12, 2021                             *Attorneys for Defendant*

14

### CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 3,671 words, including text, footnotes, and headings.


/s/ Ann C. Motto

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE**

_____
                                                    )
ÇOLAKOĞLU METALURJI A.S. &               )
ÇOLAKOĞLU, DIS TICARET A.S.,             )
                                                    )
                    Plaintiffs,                     )
            v.                                      )
                                                    )
UNITED STATES,                                      )        Court No. 20-00153
                                                    )
                    Defendant,                      )
                                                    )
            and,                                    )
                                                    )
REBAR TRADE ACTION COALITION,                       )
                                                    )
                    Defendant-Intervenor.           )
_____)

## <u>ORDER</u>

Upon consideration of plaintiffs' motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____                    _____

New York, New York                                          Judge