**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| ÇOLAKOĞLU METALURJI A.S. & ÇOLAKOĞLU DIS TICARET A.S., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> REBAR TRADE ACTION COALITION, <br><br> *Defendant-Intervenor*. | Court No. 20-00153 |

**REPLY BRIEF OF PLAINTIFFS**
**ÇOLAKOĞLU METALURJI A.S., ÇOLAKOĞLU DIS TICARET A.S.**

Matthew M. Nolan
Jessica R. DiPietro
Arent Fox, LLP
1717 K Street, NW
Washington, DC 20006

*Counsel for Çolakoğlu Metalurji A.S., and Çolakoğlu Dis Ticaret A.S.*

June 16, 2021

## TABLE OF CONTENTS

Page

I. SUMMARY OF THE ARGUMENT ................................................................................1

II. ARGUMENT ..................................................................................................................2

    A. Commerce's Determination Is Not In Accordance With Law ...............................2

    B. The Record Does Not Support Deviating From The Expected Method.................6

III. CONCLUSION ...............................................................................................................9

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Albemarle Corp. v. United States*,
   821 F.3d 1345 (Fed. Cir. 2016) ............................................................................................... 6

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................................ 3

*Evonik Rexim (Nanning) Pharm. Co. v. United States*,
   296 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) ........................................................................... 6

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) .................................................................................................... 3, 4, 5

*Mid Continent Nail Corp. v. United States*,
   949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) ........................................................................... 7

*Qingdao Sea-Line Trading Co. v. United States*,
   766 F.3d 1378 (Fed. Cir. 2014) ............................................................................................... 6

*Rebar Trade Action Coal. v. United States*,
   335 F. Supp. 3d 1302 (Ct. Int'l Trade 2018), *aff'd* 783 F. App'x 1034 (Fed.
   Cir. 2019) ................................................................................................................................ 5

*Rebar Trade Action Coal. v. United States*,
   398 F. Supp. 3d 1374 (Ct. Int'l Trade 2019) ........................................................................... 6

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
   716 F.3d 1370 (Fed. Cir. 2013) ............................................................................................... 8

**Statutes**

19 U.S.C. § 1671d(c)(5)(A) ........................................................................................... 2, 4, 5

19 U.S.C. § 1671d(c)(5)(A)(i) ................................................................................................. 2

19 U.S.C. § 1671d(c)(5)(A)(ii) ................................................................................................ 2

19 U.S.C. § 1673d(c)(5) ...................................................................................................... 4, 5

19 U.S.C. § 1677m(a)(1) ......................................................................................................... 8

-iii-

**Administrative Determinations**

*Steel Concrete Reinforcing Bar From the Republic of Turkey,* 82 Fed. Reg. 26907
    (Dep't of Commerce June 12, 2017) (final CVD results & partial rescission;
    2014) ....................................................................................................................... 5

*Steel Concrete Reinforcing Bar From the Republic of Turkey*, 83 Fed. Reg. 16051
    (Dep't of Commerce Apr. 13, 2018) (final CVD results, partial rescission;
    2015), and accompanying Issues and Decision Memorandum ................................ 7

*Steel Concrete Reinforcing Bar From the Republic of Turkey*, 84 Fed. Reg. 36051
    (Dep't of Commerce July 26, 2019) (final CVD results, partial rescission;
    2016), and accompanying Issues and Decision Memorandum ................................ 8

*Steel Concrete Reinforcing Bar From the Republic of Turkey*, 85 Fed. Reg. 42353
    (Dep't of Commerce July 14, 2020) (final CVD results, partial rescission;
    2017), and accompanying Issues and Decision Memorandum ................................ 2

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round
    Agreements Act,* H.R. Rep. No. 103–316, vol. 1 (1994), *reprinted in* 1994
    U.S.C.C.A.N 4040 ................................................................................................... 5

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| ÇOLAKOĞLU METALURJI A.S. & ÇOLAKOĞLU DIS TICARET A.S., | ) ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) Court No. 20-00153 ) |
| *Defendant*, | ) ) ) |
| and | ) ) |
| REBAR TRADE ACTION COALITION, | ) ) ) |
| *Defendant-Intervenor*. | ) ) |

**REPLY BRIEF OF PLAINTIFFS ÇOLAKOĞLU METALURJI A.S., ÇOLAKOĞLU DIS TICARET A.S.**

Plaintiffs Çolakoğlu Metalurji A.S. and Çolakoğlu Dis Ticaret A.S. (collectively "Çolakoğlu") respectfully submit this brief in reply to the response briefs of Defendant, the United States ("Defendant"), dated May 12, 2021, ECF No. 25 ("Def. Br.") and of Defendant-Intervenor, Rebar Trade Action Coalition ("Defendant-Intervenor" or "RTAC"), dated May 13, 2021, ECF No. 26 ("Def.-Int. Br.") to Çolakoğlu's Memorandum in Support of Its Rule 56.2 Motion for Judgment on the Agency Record, dated January 26, 2021, ECF No. 22 ("56.2 Br.").

**I.   SUMMARY OF THE ARGUMENT**

Çolakoğlu's reply focuses on whether the Department of Commerce's ("Commerce") determination to base Çolakoğlu's net countervailable subsidy rate on the rate calculated for

1

Çolakoğlu in a prior segment of the *Steel Concrete Reinforcing Bar From the Republic of Turkey* ("*Rebar from Turkey*") proceeding is based on substantial evidence and in accordance with law. 85 Fed. Reg. 42353 (Dep't of Commerce July 14, 2020) (final CVD results, partial rescission; 2017) ("*Final CVD Results*"), P.R. 138, ECF No. 19-4, and accompanying Issues and Decision Memorandum ("*IDM*"), P.R. 135, ECF No. 19-3.  Commerce's determination to pull forward a rate for Çolakoğlu, a non-individually examined respondent in this segment of the *Rebar from Turkey* proceeding, was unreasonable and unsupported by record evidence. The Tariff Act of 1930, as amended, along with the legislative history, and the record of this segment of the proceeding, support calculating a rate for Çolakoğlu based on the rates calculated for the mandatory respondents, Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. ("Icdas") and Kaptan Demir Celik Endustrisi ve Ticaret ("Kaptan").

**II.    ARGUMENT**

**A.    Commerce's Determination Is Not In Accordance With Law**

The statute does not explicitly provide how to calculate a subsidy rate for exporters or producers not selected for individual examination, *i.e.*, Çolakoğlu.  Commerce's regulations are similarly silent.  As explained by Defendant, "{g}enerally, in calculating the rates for non-selected respondents, Commerce relies upon section 1671d(c)(5)(A) of the statute, which provides the methodology for calculating the 'all-others' rate in countervailing duty investigations." Def. Br. at 6-7; *see also* Def.-Int. Br. at 7 (citing 19 U.S.C. § 1671d(c)(5)(A)(i) as the relevant section of the statute).  In this scenario, the statute provides that Commerce "may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated, including averaging the weighted average countervailable subsidy rates determined for the exporters and producers individually investigated." 19 U.S.C. § 1671d(c)(5)(A)(ii).

2

Where the statute and the regulations are silent, the court considers, first, whether Congress has spoken on the issue and, second, whether Commerce's interpretation of the statute is reasonable. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). This deference to Commerce's "reasonable" interpretation is not unfettered. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). Instead, "before concluding that a rule is genuinely ambiguous, a court must exhaust all the 'traditional tools' of construction." *Id.* Meaning that "a court must 'carefully consider{}' the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* (citation omitted). Only then should the court review whether Commerce's interpretation is reasonable. Even still, "not every reasonable agency reading of a genuinely ambiguous rule should receive {} deference." *Id.* at 2416.

Here, at issue is whether Commerce's and the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") interpretations of how to calculate the "all-others'" rate in antidumping duty proceedings differs from how Commerce should conduct its calculation in countervailing duty proceedings. *See* Def.-Int. Br. at 8-9 (arguing that Commerce need not use the "expected method" because that only applies to antidumping duty cases); Def. Br. at 6-7 (arguing that the law allows Commerce to apply "any reasonable method" when calculating the all others' rate where individually investigated respondents receive rates that are zero, *de minimis*, or based entirely on facts available).

The statutory language directing Commerce to calculate a rate for non-individually examined respondents who requested reviews is substantively the same for both countervailing and antidumping proceedings:

| **19 U.S.C. § 1671d(c)(5)(A) (Countervailing Duty)** | **19 U.S.C. § 1673d(c)(5) (Antidumping Duty)** |
|---|---|
| **(i) General rule**<br><br>For purposes of this subsection and section 1671b(d) of this title, the all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e of this title. | **(A) General rule**<br><br>For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title. |
| **(ii) Exception**<br><br>If the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated, including averaging the weighted average countervailable subsidy rates determined for the exporters and producers individually investigated. | **(B) Exception**<br><br>If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated. |

Importantly, the exception to *both* general rules states that Commerce "may use any reasonable method to establish {an/the} all-others rate for exporters and producers not individually investigated." 19 U.S.C. § 1671d(c)(5)(A); 19 U.S.C. § 1673d(c)(5). The statute does not define a "reasonable method" but the legislative history, *i.e.*, a tool in Commerce's and this Court's "toolbox," *see Kisor*, 139 S. Ct. at 2415, discusses directly what a "reasonable method" may be.

Defendant and Defendant-Intervenors argue that this Court should consider the legislative history narrowly because it only addresses an "expected method" to calculate the all-others' rate

4

in an antidumping duty proceeding under the exception, allowing Commerce with broad discretion to calculate the all-others' rate in countervailing duty proceedings (where the general rule does not apply).  *See* Def. Br. at 9; Def.-Int. Br. at 8-9.  However, this is precisely when an holistic view of the statute and legislative history is necessary, not automatic deference to the agency.  *See Kisor*, 139 S. Ct. at 2419 ("There can be no thought of deference unless, after performing that thoroughgoing review, the regulation remains genuinely susceptible to multiple reasonable meanings and the agency's interpretation lines up with one of the them.").  Although the legislative history does not directly speak to the countervailing duty sections of the statute, it offers insight into Congress' intent in drafting the specific language in 19 U.S.C. § 1673d(c)(5) (antidumping statute), which is nearly identical to 19 U.S.C. § 1671d(c)(5)(A) (countervailing duty statute).  *See Statement of Administrative Action accompanying the Uruguay Round Agreements Act,* H.R. Rep. No. 103–316, Vol. 1 (1994), at 942, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4251 ("authoriz{ing} Commerce to use any reasonable method to establish an all-others rate."); *see also, id.* at 873, 1994 U.S.C.C.A.N. at 4201 (explaining that a "reasonable method" is to "weight-average the zero and *de minimis* margins and margins determined pursuant to facts available, provided that volume data is available.").

Indeed, this Court has "sustain{ed} the derivative zero percent net subsidy rates for the non-selected respondents."  *See, e.g., Rebar Trade Action Coal. v. United States*, 335 F. Supp. 3d 1302, 1311 (Ct. Int'l Trade 2018), *aff'd* 783 F. App'x 1034 (Fed. Cir. 2019); *see also Steel Concrete Reinforcing Bar From the Republic of Turkey,* 82 Fed. Reg. 26907, 26909 (Dep't of Commerce June 12, 2017) (final CVD results & partial rescission; 2014) ("In accordance with the U.S. Court of Appeals for the Federal Circuit's decision in *Albemarle Corp. v. United States*, we are applying to the non-selected companies that rates calculated for the mandatory

5

respondents, which are *de minimis*.") (citing 821 F.3d 1345 (Fed. Cir. 2016)).

        **B.**      **The Record Does Not Support Deviating From The Expected Method**

The Federal Circuit has held that Commerce must rely on record evidence to make its determination with respect to the all-others' rate. *Albemarle*, 821 F.3d at 1353-55. Defendant argues that Çolakoğlu "now asks that this Court force Commerce to ignore evidence of the company's recent history." Def. Br. at 13. Çolakoğlu has not denied that in a separate proceeding Commerce determined that it benefitted from purchases of natural gas for less than adequate remuneration from a government authority. These purchases were during the January 1, 2016 through December 31, 2016 period of review; not the period of review at issue. Commerce made an assumption that Colakoglu's activity has not changed. There is no record evidence of similar purchases on this record, nor an indication that Commerce would use the same benchmark as in that proceeding to determine benefit. *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("{E}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record."); *Rebar Trade Action Coal. v. United States*, 398 F. Supp. 3d 1374, 1382 n.3 (Ct. Int'l Trade 2019) ("{A}nd the court only considers the adequacy of the determination on the record before it."); *see also Evonik Rexim (Nanning) Pharm. Co. v. United States*, 296 F. Supp. 3d 1364, 1368 (Ct. Int'l Trade 2018) (discussing that Commerce's determination was supported by substantial evidence because it "clearly stated that it relied on the . . . data . . . placed on the record.").

Both RTAC and the Government argue that "Colakoglu did not seek voluntary respondent status in this review, or make any attempt to place information on the record to demonstrate that it did not use this program in 2017." Def.-Int. Br. at 12; *see also* Def. Br. at 13.

6

However, Commerce stated in its respondent selection memorandum that it needed to limit the number of reviewed respondents because "the office to which this CVD administrative review is assigned . . . is conducting numerous concurrent AD and CVD proceedings, which places a significant restraint on the number of analysts that can be assigned to this case."  Memorandum from C. Monks to E. Yang, re Respondent Selection in Countervailing Duty Administrative Review for 2017, at 5 (Apr. 26, 2019) ("Respondent Selection Memo"), C.R. 4, P.R. 28. Commerce also stated that "{t}he overlapping statutory deadlines across all cases, as well as {the office's} general workload, limit the number of analysts available to work on this administrative review and, as a result limit the number of exporters or producers that can reasonably be individually examined." *Id.*  This Court has sustained such reasoning.  *See, e.g. Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1275 (Ct. Int'l Trade 2013) (explaining that there is "nothing unlawful about Commerce's reference to agency resource constraints.").

This notion does not negate the evidence that is currently on the record and Commerce's obligation to analyze that data.  There is no evidence showing that a *de minimis* rate would not be reflective of Çolakoğlu's experience.  Whether Commerce has calculated a countervailable subsidy margin for Colakoglu, with respect to the natural gas program, has been dependent on Commerce's benchmark analysis, and numeric benchmarks change over time.  *See, e.g. Steel Concrete Reinforcing Bar From the Republic of Turkey*, 83 Fed. Reg. 16051, 16053 (Dep't of Commerce Apr. 13, 2018) (final CVD results, partial rescission; 2015), and accompanying Issues and Decision Memorandum at 15 ("{W}e continue to find that no benefit was provided by the {Government of Turkey} to Çolakoğlu Metalurji during the POR through its purchases of natural

7

gas from BOTAS.");[1] *see Steel Concrete Reinforcing Bar From the Republic of Turkey*, 84 Fed. Reg. 36051, 36052 (Dep't of Commerce July 26, 2019) (final CVD results, partial rescission; 2016), and accompanying Issues and Decision Memorandum at 16-21 (calculating a net countervailable subsidy rate for Çolakoğlu).

We also note that achieving voluntary respondent status is not as easy as RTAC and the Defendant portray. A company wishing to achieve "voluntary respondent" status, in lieu of "mandatory respondent" status, must timely respond to all of Commerce's questionnaires without any assurance that Commerce will actually calculate a subsidy rate. *See* 19 U.S.C. § 1677m(a)(1) (providing that Commerce "shall establish an individual countervailable subsidy rate . . . for any exporter or producer not initially selected for individual examination" *if* required information is submitted *and* review of such is not "unduly burdensome to the administering authority{,} inhibit{ing} the timely completion of the investigation or review."). Commerce determined that review of more than two respondents would be unduly burdensome, explaining:

> Moreover, other offices within AD/CVD Operations have minimal additional resources with which to assist {the office}. Finally, ***we do not anticipate additional resources becoming available in the near future,*** such that we could be able to determine individual subsidy rates for each exporter or producer for which review was requested.

Respondent Selection Memo at 5, C.R. 4, P.R. 28 (emphasis added). There is no guarantee. *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1373 (Fed. Cir. 2013) ("However, even after the voluntary respondent timely submits its response to Commerce's questionnaire, Commerce may decline to fully investigate the voluntary respondent.").

Accordingly, Çolakoğlu respectfully requests that this Court issue a remand ordering that

---

[1] As recognized in its opening brief, Colakoglu again recognizes that Commerce, by using a different benchmark, calculated a benefit for Colakoglu in the 2016 review. 56.2 Br. at 9 n.1.

Commerce calculate its subsidy rate using the "expected method," which would require an average of the mandatory respondent's *de minimis* margins.

### III. CONCLUSION

For the reasons set forth above, Çolakoğlu Metalurji A.S. and Çolakoğlu Dis Ticaret A.S. respectfully request that this Court hold that Commerce's *Final CVD Results* were not based on substantial evidence, nor were they in accordance with law with respect to the rate determined for Çolakoğlu, as set forth in this brief and in Çolakoğlu's Brief in Support of Its Motion for Judgment on the Agency Record.

    Respectfully submitted,

    **/s/  Matthew M. Nolan**
    Matthew M. Nolan
    Jessica R. DiPietro
    ARENT FOX LLP
    1717 K Street, NW
    Washington, D.C. 20006
    202-857-6013

    *Counsel for Çolakoğlu Metalurji A.S.*
    *and Çolakoğlu Dis Ticaret A.S.*

Dated: June 16, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiffs' Reply Brief filed on June 16, 2021 complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by Arent Fox LLP's word processing system is 2,386.


 **/s/ Matthew M. Nolan**
Matthew M. Nolan