Slip Op. 21-161

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**COLAKOGLU METALURJI A.S. AND COLAKOGLU DIS TICARET A.S.,**

**Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**REBAR TRADE ACTION COALITION,**

**Defendant-Intervenor.**

**Before: Claire R. Kelly, Judge**

**Court No. 20-00153**

## OPINION

[Denying plaintiffs' motion for judgment on the agency record and sustaining Commerce's final results of its fourth administrative review of its countervailing duty order covering steel concrete reinforcing bar from the Republic of Turkey.]

Dated: December 2, 2021

Jessica R. DiPietro, Arent Fox, LLP, of Washington, D.C. argued for Plaintiffs. Also on the brief was Matthew M. Nolan.

Ann C. Motto, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C. argued for Defendant. Also on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director. Of counsel on the brief was Reza Karamloo, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Maureen E. Thorson, Wiley Rein LLP, of Washington, D.C. argued for Defendant-Intervenor. Also on the brief were Alan H. Price and John R. Shane.

Kelly, Judge: Before the court is plaintiffs Çolakoğlu Metalurji A.S.'s and Çolakoğlu Dis Ticaret A.S.'s (collectively, "Çolakoğlu") motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2. [Çolakoğlu's] Mot. for J. on Agency R., Jan. 26, 2021, ECF No. 22-1 ("Pl. Mot."); see also [Pl. Mot.] and Memo. of Law in Supp. of [Pl. Mot.], Jan. 26, 2021, ECF No. 22 ("Pl. Br."). Çolakoğlu asks the court to reject the U.S. Department of Commerce's ("Commerce") imposition of a countervailing duty ("CVD") on Çolakoğlu pursuant to Commerce's final results of its fourth administrative review of Steel Concrete Reinforcing Bar From the Republic of Turkey, 79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014) ([CVD] order) ("Rebar from Turkey"). Pl. Br. at 2, 10; see also Steel Concrete Reinforcing Bar from the Republic of Turkey, 85 Fed. Reg. 42,353 (Dep't of Commerce July 14, 2020) (final results and partial rescission of [CVD] admin. review; 2017), PD138,[1] ECF No. 19-4 ("Final Results"), and accompanying Issues and Decision Memo., C-489-819 (July 6, 2020), PD135, ECF No. 19-3 ("Final Decision Memo").

Specifically, Çolakoğlu argues that Commerce's decision to pull forward Çolakoğlu's CVD rate from Commerce's prior administrative review was contrary to law in that, according to Çolakoğlu, Commerce was obligated to calculate Çolakoğlu's rate by averaging the de minimis rates of the two mandatory respondents. Pl. Br. at

[1] On October 21, 2020, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination. See ECF No. 19-1–2. Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices, and all references to such documents are preceded by "PD" or "CD" to denote public or confidential documents.

5–8; see also Reply Br. of [Çolakoğlu], 2–6, June 16, 2021, ECF No. 27 ("Reply Br."). Çolakoğlu further asserts that its rate is unsupported by substantial evidence because the record lacks any information that would support the imposition of its rate. Pl. Br. at 8–10; Reply Br. at 6–9.

Defendant United States and Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") oppose the motion on the grounds that Commerce could use any reasonable method to calculate Çolakoğlu's rate, averaging the mandatory respondents' de minimis rates would not have been reasonably reflective of Çolakoğlu's actual rate, and Commerce followed its past practice in pulling Çolakoğlu's rate forward from the prior administrative review. See Def.'s Resp. to [Pl. Mot.], 5–12, May 12, 2021, ECF No. 25 ("Def. Br."); [RTAC's] Resp. Br., 7–11, May 13, 2021, ECF No. 26 ("RTAC Br."). Defendant further argues that Çolakoğlu's rate is supported by substantial evidence because Çolakoğlu previously availed itself of a subsidy program in the prior administrative review and offers no evidence that it has stopped using that program. Def. Br. at 12–13; see also RTAC Br. at 11–13.

For the following reasons, Commerce's Final Results are sustained.

## BACKGROUND

Commerce published a CVD order covering steel concrete reinforcing bar ("rebar") from the Republic of Turkey ("Turkey") on November 6, 2014. See Rebar from Turkey. Commerce administratively reviewed Rebar from Turkey on an annual basis for the years 2014, 2015, and 2016 prior to initiating the fourth administrative

review, which is the subject of this action. See [Rebar] from [Turkey], 82 Fed. Reg. 26,907 (Dep't of Commerce June 12, 2017) (final results and partial rescission of [CVD] admin. review; 2014) ("2014 Final Results") and accompanying Issues and Decision Memo., C-489-819, bar code 3578880-01 ("2014 IDM"); [Rebar] from [Turkey], 83 Fed. Reg. 16,051 (Dep't of Commerce April 13, 2018) (final results and partial rescission of [CVD] admin. review; 2015) ("2015 Final Results") and accompanying Issues and Decision Memo., C-489-819, bar code 3692588-01 ("2015 IDM"); [Rebar] from [Turkey], 84 Fed. Reg. 36,051 (Dep't of Commerce July 26, 2019) (final results and partial rescission of [CVD] admin. review; 2016) ("2016 Final Results") and accompanying Issues and Decision Memo., C-489-819, bar code 3866067-01 ("2016 IDM"); see also Final Results.

In two of three prior administrative reviews, Commerce selected Çolakoğlu as a mandatory respondent, but did not select it as a mandatory respondent in the fourth administrative review. See 2014 Final Results, 82 Fed. Reg. at 26,908 (Çolakoğlu not selected as mandatory respondent); 2015 Final Results, 83 Fed. Reg. at 16,051–52 (Çolakoğlu selected as mandatory respondent); 2016 Final Results, 84 Fed. Reg. at 36,051 (Çolakoğlu selected as mandatory respondent); Memo. from C. Monks to E. Yang re: [Rebar] from [Turkey]: Respondent Selection in [CVD] Admin. Review for 2017, 1–3, PD28, CD4, bar codes 3830692-01, 3830691-01 (May 7, 2019) ("Respondent Selection Memo"). In both the 2014 and 2015 administrative reviews of Rebar from Turkey, Çolakoğlu received de minimis rates. See 2014 Final Results, 82 Fed. Reg.

at 26,908; 2015 Final Results, 83 Fed. Reg. at 16,051–53. In the 2014 adminsitrative review, Commerce assigned all non-selected respondents de minimis rates because all mandatory respondents received de minimis rates. 2014 Final Results, 82 Fed. Reg. at 26,908–09. In the 2015 administrative review, Commerce determined that Çolakoğlu purchased natural gas from Born Hatlan Ile Petrol Tasima A.S. ("BOTAS"), a state-run company through which the Turkish government provides subsidies to Turkish companies by selling natural gas for less than adequate remuneration ("LTAR"). 2015 Final Results; 2015 IDM at 5; see also Final Decision Memo at 13, 35. However, Commerce determined that Çolakoğlu paid market rates and thus was not subject to countervailing duties. 2015 Final Results; 2015 IDM at 5, 15. In the 2016 administrative review, Commerce again found that Çolakoğlu purchased natural gas from BOTAS, but also determined that Çolakoğlu purchased the gas for LTAR. 2016 Final Results; 2016 IDM at 8. Therefore, Commerce assigned Çolakoğlu a 1.82% CVD rate for the 2016 administrative review. 2016 Final Results, 84 Fed. Reg. at 36,052.

Çolakoğlu now brings this challenge to the Final Results of the fourth administrative review of Rebar from Turkey, which covers the period of January 1, 2017 through December 31, 2017 (the "POR"). Pl. Br. at 1; see also Final Results, 85 Fed. Reg. at 42,353. Çolakoğlu, which was not selected as a mandatory respondent, specifically challenges Commerce's decision to assign to Çolakoğlu a 1.82% subsidy rate when both examined respondents received de minimis rates. Pl. Br. at 3–4, 8–

9; Final Results, 85 Fed Reg. at 42,355. Commerce calculated Çolakoğlu's rate by pulling forward Çolakoğlu's rate from the 2016 administrative review. Final Decision Memo at 4. However, Çolakoğlu argues that the statutory scheme precludes Commerce from pulling forward Çolakoğlu's prior rate, and that there is no record evidence to support the 1.82% rate because Çolakoğlu was not selected as a mandatory respondent and thus the record is devoid of any company-specific information to support Çolakoğlu's rate. Pl. Br. at 8–10; Reply Br. at 6–7. For the following reasons, Commerce's decision to assign Çolakoğlu a 1.82% CVD rate is sustained.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[2] and 28 U.S.C. § 1581(c) (2018), which grant the court authority to review actions contesting the final determination in an administrative review of a CVD order. The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

There are two issues before the court. First, Çolakoğlu contends that Commerce acted contrary to law by assigning Çolakoğlu a 1.82% CVD rate because

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Commerce was obligated to calculate its rate pursuant to the so-called "expected method" set forth in the Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. I, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201 ("SAA"). See Pl. Br. at 7. Second, Çolakoğlu asserts that even if Commerce did not err as a matter of law, the 1.82% CVD rate is not supported by substantial evidence on the record. Id. at 9. Defendant and RTAC each argue that Çolakoğlu misinterprets the relevant law, that the expected method is only presumed in the context of antidumping duty ("ADD") investigations, and that the statute empowers Commerce to use any reasonable method to calculate Çolakoğlu's rate. Def. Br. at 6–12; RTAC Br. at 7–11. Defendant and RTAC further argue that Commerce reasonably chose not to use the ADD expected method in calculating Çolakoğlu's rate because the mandatory respondents' rates were not reasonably representative of Çolakoğlu's experience in light of Çolakoğlu's history of purchasing gas from BOTAS for LTAR. Def. Br. at 11; RTAC Br. at 11. Finally, Defendant and RTAC argue that Commerce's rate for Çolakoğlu is supported by substantial evidence because it is based on the 2016 Final Results. Def. Br. at 12–13; RTAC Br. at 11–13.

## I. Commerce's Methodology

In a CVD administrative review, Commerce generally calculates the rate for companies that are not individually examined by calculating the "weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and

any rates entirely determined [using facts otherwise available]." 19 U.S.C. § 1671d(c)(5)(A)(i). However, when all mandatory respondents in an administrative review of a CVD order are assigned de minimis rates, Commerce "may use any reasonable method to establish [rates] for exporters and producers not individually investigated, including averaging the weighted average countervailable subsidy rates determined for the exporters and producers individually investigated." Id. § 1671d(c)(5)(A)(ii). The SAA reiterates that "[w]here the countervailable subsidy rates for all exporters and producers examined are zero or de minimis . . . [19 U.S.C. § 1671d(c)(5)(A)(ii)] authorizes Commerce to use any reasonable method" to calculate rates for non-examined companies.[3] SAA at 942.

Despite the apparently broad discretion the statute grants to Commerce in calculating non-examined companies' rates when all examined respondents are assigned de minimis rates, as is the case here, Çolakoğlu points to the similar provisions of the Tariff Act of 1930 which cover antidumping investigations to argue that Congress also imposed a requirement that Commerce use an "expected method" in such situations in CVD investigations and reviews. See Pl. Br. at 6–7 (citing 19 U.S.C. § 1673d(c)(5)(A)[4] and SAA at 873); see also Reply Br. at 3–5. Although

[3] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

[4] Çolakoğlu cites 19 U.S.C. § 1673d(c)(5)(A), but the relevant subsection is 19 U.S.C. § 1673d(c)(5)(B).

Çolakoğlu is correct that the sections of the Tariff Act of 1930 applicable to Commerce's calculations of non-selected respondents' ADD and CVD rates when all mandatory respondents receive de minimis rates are nearly identical, the corresponding explanations of those sections in the SAA are not. Compare 19 U.S.C. § 1671d(c)(5)(A)(ii) (CVDs) with id. § 1673d(c)(5)(B) (ADDs); compare SAA at 942 (CVDs) with id. at 873 (ADDs).

Both sections of the U.S. Code state that when all mandatory respondents receive de minimis rates, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually examined, including averaging the estimated weighted average [CVD/ADD] margins determined for the exporters and producers individually examined." Id. §§ 1671d(c)(5)(A)(ii) and 1673d(c)(5)(B). However, the SAA provides that, in the antidumping context, when all mandatory respondents receive a de minimis rate,

> [t]he expected method [for calculating an all-others rate] will be to weight-average the zero and de minimis margins and margins determined pursuant to the facts available, provided that volume data is available. However, if this [expected] method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.

SAA at 873. Although the SAA does not contain any similar language regarding an expected method for calculating all others rates in the CVD context, Çolakoğlu nonetheless contends that because the sections of the U.S. Code governing Commerce's role in calculating an all-others rate when all mandatory respondents

receive de minimis rates are so similar, the court should read into the SAA's section on all-others CVD rates the same expected method included in the ADD context. Pl. Br. at 6–7; Reply Br. at 3–5.

Contrary to Çolakoğlu's argument, that the SAA contains an expected method in the ADD context and not in the CVD context demonstrates that there is no expected method in the CVD context. Congress could have easily included the same language in both sections or even combined the sections into one if it had intended to place the exact same restrictions on Commerce in both contexts. Instead, Congress chose to elucidate an expected method of calculating an all-others rate when all mandatory respondents receive de minimis rates only in the ADD context. Compare SAA at 873 with id. at 942. Where Congress chooses to include certain language in one section of a statute and not in another similar section, courts must interpret that choice as intentionally excluding the wording where it is absent. See, e.g., I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987). Although the relevant sections of the U.S. Code are quite similar, the SAA is the authoritative interpretation of those sections of Code, and there is an explicit difference in the SAA's description of how Commerce may calculate all-others rates in the CVD context as opposed to the ADD context. Compare 19 U.S.C. § 1671d(c)(5)(A)(ii) (CVDs) with id. § 1673d(c)(5)(B) (ADDs); compare SAA at 942 (CVDs) with id. at 873 (ADDs). Even though the SAA is not a statute, it is reasonable to interpret the explicit difference between the ADD

and CVD sections of the SAA in accordance with the traditional canon of statutory construction that the difference is intentional. Cardoza-Fonseca, 480 U.S. at 432.

Such an interpretation reflects the differences between ADD and CVD investigations. As Commerce explains, as opposed to an ADD investigation in which Commerce analyzes companies' "pricing behavior," in a CVD investigation, "Commerce's concern is with government subsidization and the extent to which different companies may use or benefit from subsidy programs." Final Decision Memo at 34. Thus, CVD rates depend on individual companies' use of specific subsidy programs. In the ADD context, on the other hand, Commerce must assess pricing behavior based on a comparison between U.S. prices and the respondent's home country prices. Id.; see also 19 U.S.C. § 1677b(a). The different inquiries Commerce must make in the ADD and CVD contexts support Commerce's interpretation of the SAA's differing explanations for how to calculate rates for non-selected respondents.

Çolakoğlu argues that the relevant provisions of the U.S. Code and the SAA are ambiguous. Pl. Br. at 5–8. However, even if that were true, unless Commerce's interpretation of the Tariff Act of 1930 and the SAA is unreasonable, the court will defer to Commerce. See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, 467 U.S. 837, 842–43 (1984). To the extent any ambiguity exists as a result of the differing explanations in the SAA, Commerce's interpretation of Congress' decision not to include the requirement to first consider using the ADD expected method in the CVD provision to mean that Commerce was not required to use the ADD expected

method is reasonable. That Congress wrote the two sections differently is reason enough to interpret the sections as imposing different requirements on Commerce. The differences between ADD and CVD investigations further support Commerce's interpretation. Moreover, Congress provided in both the Tariff Act of 1930 and the SAA that Commerce may "use any reasonable method" in the CVD context without any reference to a specific method. See 19 U.S.C. § 1671d(c)(5)(A)(ii); SAA at 942. Thus, absent a specific indication to the contrary, as there is in the ADD context, it is reasonable to conclude that Commerce is not bound to use any particular methodology in the CVD context, only that the chosen methodology be reasonable.

Neither of the cases that Çolakoğlu cites change this analysis because each case Çolakoğlu cites in support of restricting Commerce to the ADD expected method in the CVD context relates to ADDs, not CVDs. See Albemarle Corp. v. United States, 821 F.3d 1345 (Fed. Cir. 2016); Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006 (Fed. Cir. 2017). Çolakoğlu has not identified any case where Commerce has been required to follow the ADD expected method in the CVD context. Therefore, Commerce's interpretation that it is not obligated to use or consider using the ADD expected method in the CVD context is reasonable.

Furthermore, that Commerce used the ADD expected method in the 2014 Final Results does not require Commerce to do so now. See Final Decision Memo at 31. Commerce's reliance here on the 2016 Final Results for a rate renders it reasonably discernible that Commerce distinguished its choice in the 2014 administrative review

because in the 2014 administrative review there was no previously calculated non-de minimis rate from Çolakoğlu to pull forward. Compare 2014 Final Results, 82 Fed. Reg. at 26,908–09, with Rebar from Turkey, 79 Fed. Reg. at 54,963–64. To be sure, the ADD expected method may be a reasonable way to calculate an all-others rate, as it was for the 2014 Final Results. But the reasonableness of Commerce's methodology in the 2014 review does not render its methodology unreasonable in this review, nor does it constrain Commerce where Commerce encounters a new context supporting a different approach. See 19 U.S.C. § 1671d(c)(5)(A)(ii); SAA at 942.

Moreover, even if the statute obligated Commerce to consider using the ADD expected method for calculation of all-others rates in the CVD context, Commerce sufficiently explained that calculating Çolakoğlu's rate using the ADD expected method of averaging the mandatory respondents' de minimis rates would not be reasonably reflective of Çolakoğlu's actual CVD rate. Final Decision Memo at 34–35. Commerce found that neither mandatory respondent purchased natural gas for LTAR from the BOTAS program during the POR or in the prior review. Id. Yet there is no dispute that the BOTAS program to sell natural gas for LTAR still exists. See id. at 13. Çolakoğlu did not provide any evidence that it no longer purchases natural gas from BOTAS for LTAR. Id. at 34–35; see QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (it is the parties' obligation to develop the record, not Commerce's). Because CVD rates depend upon the specific subsidy programs used and Çolakoğlu had a history of purchasing natural gas from BOTAS during the two

prior reviews, both for market rates and for LTAR, Commerce concluded that the mandatory respondents' rates would not reasonably reflect Çolakoğlu's rate. Final Decision Memo. at 34–35. Thus, even if Commerce was obligated to consider using the ADD expected method, it adequately explained why using the ADD expected method was not reasonably reflective of Çolakoğlu's rate in this case. See SAA at 873.

Not being bound to use the ADD expected method and, in any case, having sufficiently explained why the ADD expected method would not lead to a rate reasonably reflective of Çolakoğlu's actual rate, Commerce was entitled to use any reasonable method to calculate Çolakoğlu's rate. 28 U.S.C. § 1671d(c)(5)(A)(ii); SAA at 942. Commerce explained that it determined that "a reasonable method" to calculate all-others rates in the CVD context where all mandatory respondents receive de minimis rates "is to assign to the non-selected respondents the average of the most recently determined rates that are not zero, de minimis, or based entirely on facts available."[5] Final Decision Memo at 4. Commerce further explained that "if a non-selected respondent has its own calculated rate that is contemporaneous with or more recent than such previous rates, Commerce has found it appropriate to apply that calculated rate to the non-selected respondent, even when that rate is zero or de minimis." Id.

[5] Commerce calculated the rates for the other non-selected respondents in this review by averaging the non-de minimis rates calculated during the 2016 review. The all-others rate for those companies is 2.29%. Id. at 4.

Given that Commerce will generally not have any company-specific information about non-selected respondents and the broad statutory authority to use "any reasonable method" to calculate rates when the mandatory respondents received de minimis rates, the court concludes that Commerce's chosen method is reasonable. Only mandatory respondents are required to respond to Commerce's requests for information. See 19 U.S.C. § 1677f-1(e); 19 C.F.R. § 351.204(c). Therefore, unless non-selected respondents voluntarily supply information to Commerce, which Commerce can either accept or decline, the only information on the record would be the information that led Commerce to assign de minimis rates to the mandatory respondents. See id. § 1677f-1(e); 19 C.F.R. § 351.204(d). Thus, by specifically carving out an exception to the general rule that Commerce should calculate all-others rates by using a weighted average of the mandatory respondents' rates for situations such as this when all mandatory respondents receive de minimis rates, see 19 U.S.C. § 1671d(c)(5)(A)(i)–(ii), Congress contemplated Commerce pulling forward previously determined rates. In light of this record, it is reasonable for Commerce to use the most recent company-specific information to calculate Çolakoğlu's rate. See Final Decision Memo at 4, 34–35.

## II. Evidence Supporting Commerce's Rate

Çolakoğlu argues that even if Commerce's method in calculating Çolakoğlu's rate was reasonable, the record does not support a 1.82% CVD rate for this POR. Pl. Br. at 8–10. Defendant and RTAC assert that any lack of record evidence stems from

Çolakoğlu's failure to seek voluntary respondent status or otherwise attempt to populate the record. Def. Br. at 13; RTAC Br. at 12. In any case, Defendant and RTAC contend that Commerce need not have relied on any evidence other than the 2016 Final Results because there was no evidence indicating that Çolakoğlu no longer purchased natural gas from BOTAS for LTAR. Def. Br. at 13; RTAC Br. at 12. For the following reasons, Commerce's decision to assign Çolakoğlu a 1.82% CVD rate is supported by substantial evidence.

Commerce determined that Çolakoğlu utilized a subsidy program provided by the Turkish government by purchasing natural gas from BOTAS in both 2015 and 2016. See 2015 IDM at 5, 10; 2016 IDM at 8, 16. Commerce explained that in the absence of evidence to the contrary, Commerce will assume that a company continues to avail itself of subsidy programs that it has been found to have previously used. Final Decision Memo at 34. Here, Çolakoğlu offered no evidence that it discontinued its use of the BOTAS subsidy program, or that it continued to purchase natural gas from BOTAS but for adequate remuneration. See id. at 34–35. Çolakoğlu does not dispute that it failed to offer any evidence to contradict Commerce's rate. Pl. Br. at 9. Instead, Çolakoğlu claims that it was not obligated to place any information on the record and that in the absence of any company-specific information Commerce was prohibited from looking to past reviews and instead was obligated to use the expected method, which Çolakoğlu asserts is the only reasonable method in the absence of record evidence. Id. at 9–10; Oral Argument, 18:10, October 7, 2021, see

ECF No. 33 ("Oral Arg."). This argument simply re-packages Çolakoğlu's argument that Commerce's method was contrary to law and is therefore rejected for the same reasons.

Moreover, the obligation to populate the record is the parties', not Commerce's. QVD Food Co., 658 F.3d at 1324. Çolakoğlu conceded as much at oral argument. Oral Arg. at 21:04. Nonetheless, Çolakoğlu admits that it did not even attempt to place any relevant information on the record. Oral Arg. at 16:45. The U.S. Court of Appeals for the Federal Circuit has held that the availability of voluntarily submitted information of non-selected respondents cautions against pulling forward a rate from a prior review in lieu of adopting the de minimis rate of the examined respondents. See Albemarle, 821 F.3d at 1358 (drawing a distinction between a non-cooperating party and a party that volunteered for investigation and tried to submit data but was rejected in both instances by Commerce); Changzhou Hawd Flooring Co. v. United States, 947 F.3d 781, 793–94 (Fed. Cir. 2020) (finding that "efforts in volunteering for investigation [and providing extensive information aimed at enabling such review] offer some reason to think that for those firms, unlike for non-volunteer firms, there is no more need for continuing coverage than there is for individually investigated firms" with de minimis rates). The court need not opine on whether Commerce's determination would be reasonable had Commerce rejected voluntarily submitted evidence of a de minimis or lower rate. Although Commerce would not have been required to accept or review any such information, the fact that Çolakoğlu did not

offer any leaves it unable to contest Commerce's conclusion that Çolakoğlu continues to purchase natural gas from BOTAS for LTAR. Although Commerce may not justify "the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making," Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013), the absence of evidence was entirely due to Çolakoğlu's failure to provide any data.

In light of the record in this case that Commerce determined that BOTAS continued to supply natural gas for LTAR during the POR, Çolakoğlu was found to have utilized that subsidy program in each of the prior two periods of review, and Çolakoğlu failed to make any attempt to place any contradictory information on the record, Commerce's decision to pull forward Çolakoğlu's prior rate is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Çolakoğlu's motion for judgment upon the agency record is denied, and Commerce's Final Results are sustained. Judgment for defendant will enter accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: December 2, 2021
New York, New York